IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN J. COGGINS et al., | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 15-480 |
| | : | |
| KEYSTONE FOODS, LLC, | : | |
| Defendant. | : | |

MCHUGH, J.                                                                                            MAY 27, 2015

**MEMORANDUM**

This action requires the Court to examine whether Plaintiffs' state law claims based on retirement agreements entered into with their employer are completely preempted by the Employment Retirement Income Security Act of 1974 (ERISA). See 29 U.S.C. §§ 1001-1461. Defendant has removed the case on this theory, and the Court must now determine whether it has proper jurisdiction over the claims, as well as whether remand is appropriate.

**I.    Factual Background**

Plaintiffs in this action are former executives of Defendant Keystone Foods, LLC (Keystone). Keystone was acquired by Marfrig Global Foods in 2010, and shortly thereafter, Keystone executed a "Retirement Agreement" with each Plaintiff in order to provide an incentive for Plaintiffs to stay with the company. These Retirement Agreements promised to provide each Plaintiff and their family with certain payments and benefits for life, including certain "Medical Benefits" in consideration of Plaintiffs' prior and future service to the company.

Specifically, the Medical Benefits provision of the agreements states that "Keystone also agrees to maintain the existing health care benefits, including medical, prescription, dental and vision, and the existing Medical Reimbursement Plan, for Employee and qualified dependents

1

for life." Complaint Ex. A at 2(a).[1] In 2011, as active employees, Plaintiffs received all health care benefits at no cost to Plaintiffs, including prescription, dental, and vision. Plaintiffs received base healthcare benefits through Keystone's medical insurance plans, while Keystone allegedly paid the full cost of the premiums and any costs not covered or paid for by those insurance plans pursuant to the Medical Reimbursement Plan, such as copays and coinsurance. Plaintiffs describe their "existing health care benefit" in 2011 as "a fully paid, no cost, medical, prescription, dental and vision plan." Pl. Memorandum in Support of Motion to Remand at 3.

Plaintiffs allege that, under the terms of the Retirement Agreements, Keystone is obligated to provide the same benefits Plaintiffs received in 2011 to Plaintiffs and their dependents "for life." All Plaintiffs have now retired from Keystone and have satisfied the service requirements necessary to receive the medical benefits under the Retirement Agreements. However, Keystone has stated that it will no longer honor the Retirement Agreements beginning January 1, 2015 nor will Keystone reimburse Plaintiffs for their out-of-pocket costs after that date.

Plaintiffs filed this action in the Montgomery County Court of Common Pleas claiming breach of contract and violation of Pennsylvania's Wage Payment and Collection Law. Keystone removed the case to this Court on the theory that ERISA completely preempts the Plaintiffs' state law claims. Plaintiffs have moved to remand the case back to state court, and Defendants have separately moved to dismiss the action.

---

[1] The other two retirement agreements contain almost identical language. See Complaint Ex. B & C ("Keystone also agrees to maintain the existing health care benefits, including medical, prescription, dental and vision, and the existing Medical Reimbursement Plan, for Employee and qualified dependents for life. Eligibility for any retiree medical benefits shall require full compliance with any age and service requirements, as such requirements may be modified by Keystone generally.").

## II. Standard of Review

Necessarily, I must address Plaintiffs' Motion to Remand first because I may not decide the pending Motion to Dismiss without subject matter jurisdiction. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Removal statutes are strictly construed against removal "and all doubts should be resolved in favor of remand." Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987) (citing Abels v. State Farm Fire & Cas. Co., 770 F.2d 36, 29 (3d Cir. 1985)). On a motion to remand, the district court "assumes as true all factual allegations of the complaint." Id. (citing Green v. Amerada Hess Corp., 707 F.2d 201 (5th Cir. 1983)). The defendant has the burden of proving the action was properly removed. See Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 219 (3d Cir. 2005) (citing Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004)). Keystone asserts that Plaintiffs' claims are completely preempted by ERISA, with the result that this Court has federal question jurisdiction under 28 U.S.C. § 1331. Plaintiffs argue that their claims are not completely preempted by ERISA, and that Defendant waived any right to remove this case to federal court based on language in the Retirement Agreements.

## III. Complete Preemption by ERISA

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Cases involving a "federal question"—those "arising under the Constitution, laws, or treaties of the United States"—are one such category over which the district courts have jurisdiction. 28 U.S.C. § 1331. However, a cause of action ordinarily

only arises under federal law where the plaintiff's well-pleaded complaint raises those issues of federal law in accordance with Louisville & N.R. Co. v. Mottley, 211 U.S. 149 (1908).

Federal preemption "is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore does not authorize removal to federal court." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987). Nonetheless, there are times where "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Id. at 63-64. In Taylor, the Supreme Court determined that "Congress had clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of [ERISA's] § 502(a) removable to federal court." Id. at 66. Taylor's treatment of § 502(a)[2] was based on comparison to § 301 of the Labor Management Relations Act (LMRA), which the Supreme Court had previously deemed "so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." Id. at 64 (quoting Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 23 (1983)). Thus, ERISA preemption operates on two fronts: Section 502(a) and Section 514(a). See In re U.S. Healthcare, Inc., 193 F.3d 151, 160 (3d Cir. 1999). Section 502(a), ERISA's civil enforcement provision, is a "jurisdictional concept," while Section 514(a) expressly preempts state law and is the "substantive concept governing the applicable law." Id.

The Supreme Court further clarified complete preemption under ERISA in Aetna Health Inc. v. Davila, 542 U.S. 200 (2004). The Court noted that "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other

---

[2] When ERISA was enacted in 1974, the Act was codified in Title 29 of the U.S. Code. However, the section numbers in the original Act were codified under different numbers in the Code. Many opinions subsequent to 1974 use the original numbering found in the Act. The two main provisions at issue here are Section 502(a) and Section 514(a). These sections are codified in 29 U.S.C. §§ 1132(a), 1144(a).

4

independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely preempted by ERISA § 502(a)(1)(B)." Id. at 210. When a plaintiff asserts a state-law claim that "duplicates, supplements, or supplants the ERISA civil enforcement remedy," the state law claim is completely preempted. Id. at 209. Thus, in the present case, (1) if Plaintiffs could have brought their claims under § 502(a)(1)(B); and (2) there is no other independent legal duty implicated by Defendant's actions; then ERISA completely preempts their state law claims and removal was proper.

As mentioned, § 502 provides the civil enforcement mechanisms of ERISA. Section 502(a)(1)(B) specifically provides:

> A civil action may be brought—
> (1) by a participant or beneficiary—
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B).

Plaintiffs assert that they do not seek any additional benefits from Keystone's Healthcare Benefits Plan, but rather seek the additional out of pocket costs that they are allegedly entitled to have reimbursed under the Retirement Agreements. To clarify, Plaintiffs receive medical benefits under Keystone's Healthcare Benefits Plan, and the Retirement Agreements allegedly entitle them to continued benefits under that plan, as well as reimbursement of all other out-of-pocket expenses related to those medical benefits, such as insurance premiums, copays, and coinsurance, pursuant to the Medical Reimbursement Plan. Plaintiffs' theory is that the Healthcare Benefits Plan and Medical Reimbursement Plan provide benefits covered by ERISA, but the separate Retirement Agreements merely define Plaintiffs' rights to continue receiving these benefits, rather than provide new benefits covered under ERISA. Plaintiffs urge the Court

to view the Retirement Agreements as separate contracts which cannot be enforced under § 502(a)(1)(B).

**IV.     ERISA "Plans"**

The purpose of ERISA is "to provide a uniform regulatory regime over employee benefit plans." Davila, 542 U.S. at 208. An "employee benefit plan" under ERISA includes an "employee welfare benefit plan" established and maintained for the purpose of providing its participants or beneficiaries with medical benefits. 29 U.S.C § 1002(1), (3). Whether the civil enforcement mechanisms of § 502(a)(1)(B) preempt Plaintiffs' claims will depend on whether the Retirement Agreements are "plans" governed by ERISA.

The Parties agree that Keystone's Healthcare Benefits Plan is governed by ERISA. However, the Parties dispute whether the Retirement Agreements constitute employee benefits plans covered by ERISA. Defendant argues that the Retirement Agreements are plans governed by ERISA in their own right. Indeed, "[a]n employer can establish an ERISA plan rather easily." Gruber v. Hubbard Bert Karle Weber, Inc., 159 F.3d 780, 789 (3d Cir. 1998) (quoting Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co., 809 F.2d 617, 625 (9th Cir. 1987)). The Definitions provision of ERISA states:

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C.A. § 1002(1).

The Third Circuit has held that "ERISA applies to 'any employee benefit plan if it is established or maintained . . . by any employer engaged in commerce,'" though "ERISA itself does not provide a definition of the word 'plan.'" Deibler v. United Food & Commercial Workers' Local Union 23, 973 F.2d 206, 209 (3d Cir. 1992) (quoting 29 U.S.C. § 1003(a)). Nonetheless, the court noted that "[t]he crucial factor in determining whether a 'plan' has been established is whether [the employer has expressed an intention] to provide benefits on a regular and long-term basis." Id. (citing Wickman v. Northwestern National Ins. Co., 908 F.2d 1077, 1083 (1st Cir. 1990)). The prevailing standard for determining whether a "plan" exists was established by the Eleventh Circuit in Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982):

> In summary, a "plan, fund, or program" under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits. To be an employee welfare benefit plan, the intended benefits must be health, accident, death, disability, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits; the intended beneficiaries must include union members, employees, former employees or their beneficiaries; and an employer or employee organization, or both, and not individual employees or entrepreneurial businesses, must establish or maintain the plan, fund, or program.

The Third Circuit endorsed this standard in Deibler, and has continued to use the Donovan standard since. See, e.g., Menkes v. Prudential Ins. Co., 762 F.3d 285, 290 (3d Cir. 2014); Shaver v. Siemens Corp., 670 F.3d 462, 475 (3d Cir. 2012); Gruber, 159 F.3d at 789.[3]

As distilled by the Court of Appeals, "[a]n ERISA plan 'is established if from the surrounding circumstances a reasonable person can ascertain [1] the intended benefits, [2] a class of beneficiaries, [3] the source of financing, and [4] procedures for receiving benefits.'"

---

[3] In fact, all circuits have adopted the Donovan standard for determining whether an ERISA plan exists. Jane E. Zenglein et al., ERISA Litigation 12 (4th ed. 2011).

Menkes, 762 F.3d at 290. In determining whether a plan exists, "the district court should consider all other evidence that would indicate the presence or absence of an informal employee benefit plan. For example, internal or distributed documents, oral representations, existence of a fund or account to pay benefits, actual payment of benefits, a deliberate failure to correct known perceptions of a plan's existence, the reasonable understanding of employees, and the intentions of the putative sponsor would all be relevant to determine whether a plan existed." Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Employees, 974 F.2d 391, 400 (3d Cir. 1992).

The Retirement Agreements at issue here state: "Keystone also agrees to maintain the existing health care benefits, including medical, prescription, dental and vision, and the existing Medical Reimbursement Plan, for Employee and qualified dependents for life." Compl. Ex. A-C. This delineates what benefits were to be paid to Plaintiffs upon retirement. While the specifics of the benefits to be provided are not embedded in the Agreements, the language makes clear that these will be tethered to the benefits that existed at the time, which Plaintiffs allege includes all out-of-pocket expenses related to medical care under the Medical Reimbursement Plan. The intended health benefits clearly fall within the realm of an ERISA welfare benefits plan. Similarly, the procedure for obtaining these benefits moving forward remains the same as it was previously—specified by the Healthcare Benefits Plan and Medical Reimbursement Plan. The class of beneficiaries is also clear, as each Retirement Agreement is directed at a single "Employee and qualified dependents." Id. The source of the funding is clearly the employer, Keystone, which has established this contract to provide long-term medical benefits to Plaintiffs and their beneficiaries for the rest of their lives.

These facts weigh in favor of Keystone's position, because, "a number of courts have held that an employer's payment of insurance premiums, standing alone, is *substantial evidence* of the existence of an ERISA plan." Gruber, 159 F.3d at 789 (citing Robinson v. Linomaz, 58 F.3d 365, 368 (8th Cir. 1995) (citing cases from Fourth, Seventh, Ninth, and Eleventh Circuits)). Insurance premiums are precisely among the health benefits that Plaintiffs allege Defendant has agreed to continue paying for them under the Retirement Agreements. Indeed, severance agreements, which are closely analogous to the Retirement Agreements in that both define compensation to be received upon termination of employment, are classified under ERISA as welfare benefits plans. Koenig v. Automatic Data Processing, 156 F. App'x 461, 466 (3d Cir. 2005) (citing Deibler, 973 F.2d at 209).

That does not settle the question, however, because "severance benefits do not implicate ERISA unless they require the establishment and maintenance of a separate and ongoing administrative scheme." Angst v. Mack Trucks, Inc., 969 F.2d 1530, 1538 (3d Cir. 1992). In fact, the Third Circuit recently applied the "ongoing administrative scheme" requirement to supplemental insurance in Menkes v. Prudential Ins. Co. of Am., 762 F.3d 285 (3d Cir. 2014). The court wrote:

> One of the touchstones of a plan that is governed by ERISA is the "establishment and maintenance of a separate and ongoing administrative scheme," which the plan administrator must set up in order to determine eligibility for benefits. Shaver, 670 F.3d at 476 (citing Angst v. Mack Trucks, Inc., 969 F.2d 1530, 1538 (3d Cir. 1992)). This feature derives from the Supreme Court's decision in Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 11, 107 S. Ct. 2211, 96 L.Ed.2d 1 (1987), in which the Court held that ERISA preemption was designed "to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations," in situations where there exists an "ongoing administrative program to meet the employer's obligation."

Menkes, 762 F.3d at 290-91.

In Fort Halifax, the Supreme Court held that "[t]he requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever . . . . The employer assumes no responsibility to pay benefits on a regular basis and thus faces no periodic demands on its assets . . . . Rather the employer's obligation is predicated on the occurrence of a single event that may never materialize . . . . To do little more than write a check hardly constitutes the operation of a benefit plan." 482 U.S. at 12. A critical question is whether "the employer, to determine the employee's eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the [policy's] criteria." Menkes, 762 F.3d at 291 (quoting Shaver v. Siemens Corp., 670 F.3d 462, 477 (3d Cir. 2012)); see also Middleton v. Philadelphia Elec. Co., 850 F. Supp. 348, 352 (E.D. Pa. 1994); Jacob v. Smithkline Beecham, 824 F. Supp. 552, 557 (E.D. Pa. 1993); Gyde v. Nutri/System, Inc., 1997 WL 186330, at *3-4 (E.D. Pa. 1997); Reinstadtler v. Bayone Urethane Systems, LLC, 2007 WL 712204, at *4-5 (W.D. Pa. 2007). In Angst, the court concluded that a severance plan continued disbursement of benefits according to an already existing ERISA plan, "did not require the creation of a new administrative scheme and did not impose new administrative requirements on an existing administrative scheme, but rather simply required the continuation of an existing procedure," and therefore fell outside ERISA. 969 F.2d at 1540-41.

In much the same manner, the Retirement Agreements here provide for a continuation of benefits under Keystone's Medical Benefits Plan. There is no new administrative scheme created through the Retirement Agreements. They are merely extensions of the benefits that Plaintiffs were already receiving at the time of their departure. There is also no discretion afforded to Keystone in terms of eligibility for such plans, and no discretionary mechanisms

involved in administering the plan. Plaintiffs have merely entered into agreements to continue receiving the benefits that they received prior to retirement.

The four-part Donovan test has a broad reach. I read Angst and similar cases from other circuits as carving out a subset of cases under Fort Halifax, by adding a requirement that for ERISA to apply some new administrative framework is necessary.

Defendants rely heavily on Minnis v. Baldwin Bros. Inc., 150 F. App'x 118 (3d Cir. 2005). The plaintiff there sued in state court seeking to recover "pension" benefits. Plaintiff alleged that the president of his former employer had promised a $400.00-per-month pension to be paid until the plaintiff's death. The employer removed the suit, asserting that plaintiff's breach of contract claim was actually a claim to enforce the terms of an employee benefits plan subject to ERISA § 502(a)(1)(B), and thus completely preempted. Applying the four-factor Donovan test, the appeals court concluded that the promise was a "plan" within the confines of ERISA.

Minnis is not a precedential decision. Furthermore, it is a cursory, *per curiam* opinion, in which the court notes that Plaintiff himself pleaded his case as an ERISA claim, and that his claim was clearly barred by the statute of limitations. Minnis is consistent with more extensive opinions from other circuits that recognize a promise to a single employee can constitute a plan. Significantly, however, those cases have held "that a contract with a single employee to provide post-termination benefits may be a 'one-person' ERISA plan **if** it satisfies the 'administrative scheme' criteria" of Fort Halifax. Dakota, Minnesota & Eastern Railroad Corp. v. Schieffer, 648 F.3d 935, 938 (8th Cir. 2013) (emphasis added) (citing Cvelbar v. CBI Illinois Inc., 106 F.3d 1368, 1376 (7th Cir. 1997); Biggers v. Wittek Indus., 4 F.3d 291, 297 (4th Cir. 1993); Williams

v. Wright, 927 F.2d 1540, 1545-47 (11th Cir. 1991)).  That key requirement is not met here, because no new administrative scheme was created.

In Angst, the Third Circuit confronted a "buyout plan" that obligated an employer to pay its departing employees a lump sum of $75,000, and a year of continued benefits in exchange for the employees voluntarily leaving the company.  969 F.2d at 1532.  The court, citing Fort Halifax concluded "that the buyout plan, which did not require the creation of a new administrative scheme, did not implicate" ERISA because, "[t]o the extent the buyout required ongoing administration of benefits, that administration occurred pursuant to a duly constituted benefits plan that already existed . . . ."  Id. at 1538-39.

The buyout plan in Angst is very similar to the Retirement Agreements before this Court in that neither the Retirement Agreements nor the buyout plan created a new administrative scheme or even altered an old administrative scheme.  Just as in Angst, the Retirement Agreements only specify the **continued** provision of benefits according to the same administrative scheme that Plaintiffs' benefits were governed by at the time of their retirement. In Minnis, the pension created by the employer's promise would have required a new administrative scheme rather than a simple continuation of benefits.  Since no new administrative scheme is created by the Retirement Agreements, they are not plans within the meaning of ERISA § 502(a), and thus Plaintiffs' claims are not completely preempted.

It bears mention that Keystone itself did not regard the Retirement Agreements to be ERISA plans at the time of drafting, as exemplified by the following provision in two of the three Retirement Agreements:

> The law of the Commonwealth of Pennsylvania shall govern the construction and validity of this Agreement. Any disputes or claims of any nature arising out of or in any way related to this Agreement or Employee's employment by Keystone shall be submitted to the Court of Common Pleas of Montgomery County,

> Pennsylvania, and Employee agrees and submits to the exclusive jurisdiction of
> the Court of Common Pleas of Montgomery County.

If these agreements were completely preempted by ERISA, as Defendant now chooses to argue, it would be impossible for the Plaintiffs to submit to exclusive jurisdiction in a Pennsylvania state court. This cannot control the jurisdictional analysis, but is certainly relevant to the Parties' intent and state of mind at the time of drafting.

## V. Conclusion

I find that the Retirement Agreements are not "plans" that may be enforced under § 502(a)(1)(B) of ERISA, and therefore Plaintiffs' claims are not completely preempted under Davila. In light of this finding, this Court does not have federal question jurisdiction over the claims in this case, and Plaintiffs' Motion to Remand will be granted. Additionally, this Court now lacks the power to consider Defendant's pending Motion to Dismiss. An appropriate Order follows.

/s/ Gerald Austin McHugh
United States District Court Judge